UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RST (2005), INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-11680WGY |
| v. ) | |
| ) | |
| JOHN DOES 1-100, JANE DOES 1-100, ) | |
| AND XYZ COMPANIES 1-100, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND ORDER OF SEIZURE, WITH TEMPORARY RESTRAINING ORDER

### INTRODUCTION

Plaintiff's papers establish that defendant bootleggers, and those acting in concert with them, will sell, or attempt to sell, bootleg T-shirts and other bootleg merchandise bearing or depicting the names, likenesses and trademarks (collectively, the "Trademark") at concerts of the musical rock group professionally known as THE ROLLING STONES (the "Artist") during the Artist's current tour. The papers further establish that defendants are present, or almost certainly will be present, in this district to sell, or attempt to sell, infringing merchandise in connection with the Artist's concerts at Fenway Park in Boston, Massachusetts, on August 21 & 23, 2005. The bootleg merchandise will bear the Artist's name, images and logos, without legal authority. Indeed, Plaintiff has the exclusive right to sell and license the sale of merchandise bearing the Artist's trademark in connection with concerts on the tour.

Plaintiff is entitled to a temporary restraining order, to an order permitting seizure of the bootleg merchandise, and ultimately to a preliminary injunction prohibiting these illegal acts. By using the Artist's names, images and logos without authorization, defendants and their cohorts are violating section 43(a) of the Lanham Act (unregistered marks and unfair competition) and common law prohibitions against unfair competition and violations of the right of publicity.

Defendants can assert no defense to Plaintiff's claims. Moreover, not only is each bootleg sale irretrievably lost to Plaintiff, but the damage to Plaintiff's and the Artist's good will through the distribution of inferior merchandise cannot be calculated or remedied. The only way that these bootleggers can be stopped is through issuance of a temporary restraining order and order of seizure followed by a preliminary injunction.

The public interest would be served by issuance of the relief requested, since the public interest generally favors the protection of legitimate property and contractual rights. In addition, the relief requested is the only method of protecting the public from inferior merchandise, including the infringing merchandise, which bears a false designation of origin. Such merchandise is created and sold by individuals accountable to no one, whether for payment of royalties, income or sales taxes, or for quality control. There is no potential harm to any legitimate interest of defendants or any other persons if the requested relief is granted.

## STATEMENT OF RELEVANT FACTS

Plaintiff possesses the exclusive rights to use the Artist's name, likenesses and trademarks on merchandise sold at or in connection with the Artist's concerts on its current tour.

The Artist's tour commences on August 21, 2005 in Boston, Massachusetts and will continue throughout major cities in the United States, including performances in Hartford, Detroit, Chicago, New York, Columbus, Washington, Philadelphia, Atlanta, Los Angeles, San

{B0432166; 2}

Francisco and Dallas.  The Artist will perform at Fenway Park in Boston, Massachusetts on August 21 & 23, 2005 (the "Boston Shows").  The Tour will then continue to travel throughout the country, including performances in major U.S. cities continuing until late January 2006.  On previous tours of the Artist, bootlegging activities were witnessed by **Nick Jones, the Tour Merchandising Manager for Anthill Trading, Inc.,** the exclusive merchandising licensee for the current tour.  At past concerts held by the Artist, bootleggers sold and offered for sale, unauthorized Bootleg Merchandise, in violation of Plaintiff's rights and property interests.  For example, at prior concerts in Boston, Mr. Jones observed numerous individuals attempting to sell bootlegging merchandise.  Based upon Mr. Jones' experiences with bootlegging on prior tours, Plaintiff now seeks an injunction against the bootleggers who are expected to be at the Tour venues on this Tour.  On this basis and for the reasons set forth below, the Plaintiff seeks a preliminary injunction, with temporary restraining order and order of seizure.

Based upon the immense popularity of the Artist, and upon the prior experience of the Plaintiff, the area surrounding the Boston concert venue, and all subsequent concert venues, will be an impromptu vending site for professional bootleggers offering illegal merchandise for sale bearing the Artist's trademarks.  In order to protect its exclusive rights, Plaintiff seeks the injunctive relief described herein.

## ARGUMENT
### I.

### THE SALE OF "BOOTLEG" MERCHANDISE VIOLATES PLAINTIFF'S EXCLUSIVE RIGHTS

Plaintiff has the exclusive right to sell and license the sale of merchandise bearing the Artist's name, image and logos on the Artist's current tour.  The sale of counterfeit merchandise by defendants violates these rights and must be enjoined.  In addition, parties committing acts of

{B0432166; 2}

trademark infringement and counterfeiting cause injury to the public by confusing consumers as to the source or origin of goods in the marketplace, providing another rationale for enjoining defendants' actions.  See, e.g., Star Financial Services, Inc., v. AASTAR Mortgage Corp., 89 F. 3d 5, 9 (1st Cir. 1996) ("[t]he purpose of trademark laws is to prevent the use of the same or similar marks in a way that confuses the public about the actual source of the goods or service); see also DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 605 (1st Cir. 1992).  Confusion about source exists when a buyer is likely to purchase one product in the belief she was buying another and is thus potentially prevented from obtaining the product she actually wants.  Id.).

A.      **Defendants Are Violating Section 43(a) Of The Lanham Act**

Federal courts, including this Court, have repeatedly held that the use of registered and unregistered names, images and logos of musical artists by bootleggers violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  See Exhibits A through F annexed to Declaration of Barry I. Slotnick, Esq. and the cases listed in Appendices A and B attached hereto.  See also Winterland Concessions Co. v. Creative Screen Design Ltd., 214 U.S.P.Q. 188 (N.D. Ill. 1981) (sales of bootleg T-shirts bearing the names of various rock artists violates § 43(a)); Billy Joel v. Various John Does, 499 F. Supp. 791, 792 (E.D. Wisc. 1980) (sale of unauthorized T-shirts bearing the name of the artist Billy Joel violates section 43(a) of the Lanham Act).

Section 43(a) is designed to prevent a wide range of conduct involving both registered and unregistered names, images and logos.  Section 43(a) provides in pertinent part:

> Any person who, on or in connection with any goods or services . .  uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another

{B0432166; 2}

> person, or as to the origin, sponsorship or approval of his or her
> goods, services or commercial activities by another person, . . .
> shall be liable in a civil action by any person who believes that he
> or she is likely to be damaged by such act.

This broad prohibition against "unfair competition" covers not only confusion as to source or sponsorship between defendants' goods and Plaintiff's goods, but it also prohibits the misappropriation of the efforts of others. McKenney and Long, Federal Unfair Competition: The Lanham Act § 2:04 (1989). Section 43(a) codifies the principle enunciated by the Supreme Court in International News Service v. Associated Press, 248 U.S. 215 (1918) that "a party cannot reap where it has not sown." See also R.H. Donnelley Corp. v. Illinois Bell Telephone Co., 595 F. Supp. 1202, 1206 (N.D. Ill. 1984) ("those who invest time, money and energy into the development of a product and its accompanying good will should be allowed to reap the advantages of their investment").

The elements of the claim for violation of Section 43(a) are: (1) that the mark is valid and protectable, and (2) that the defendant's use of the mark is likely to cause confusion among the consuming public. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992).

This test is clearly met here. The Artist's names, images and logos are strong protectable marks. Using the traditional scale of marks from the generic to the arbitrary, Plaintiff's marks are arbitrary: they do not describe the goods to which they are attached. Accordingly, they are entitled to the highest protection.

The likelihood of confusion is measured by the standard enunciated by Judge Friendly in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). Under this standard the Court should consider the following factors in determining the likelihood of confusion:

> the strength of the mark, the degree of similarity between the
> marks, the proximity of the products, the likelihood that the prior

- 5 -

> owner will bridge the gap, actual confusion, and the reciprocal of
> defendant's good faith in adopting its own mark, the quality of
> defendant's product, and the sophistication of the buyers.

Id. at 495.

Judged by these factors, there is no defense to defendants' use of Plaintiff's marks. The

Artist's name, image and logo are very strong marks. Defendant bootleggers will be copying

these trademarks and images on the infringing merchandise and selling such merchandise at the

Artist's concerts. The same items -- T-shirts and hats, together with other typical concert

merchandise -- will be offered for sale by both the Plaintiff and the bootleggers in the same areas

on the same dates. Concert goers will not "shop around," but will make purchases whenever

convenient on their arrival at and departure from the concerts. Moreover, where, as here,

defendants are aware of the Plaintiff's use of the mark, defendants' intent is presumed to be in

bad faith. See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 344 (9th Cir. 1979) (deception may

be presumed from the knowing adoption of a similar mark). Intentional copying of the Artist's

mark makes a likelihood of confusion a certainty.

Defendants have manufactured bootleg merchandise for the sole purpose of selling it at

the concert venues. It is beyond dispute that defendants have utilized, and will continue to

knowingly utilize, the Artist's protected marks to deceive the public and create the appearance

that defendants' illegal merchandise is sponsored by or originated with the Artist and Plaintiff.

This is precisely the type of conduct Section 43(a) was designed to prevent.

**B.    Defendants are Violating the Massachusetts Right of Privacy**

Plaintiff has the exclusive right to control the commercial value of the name and likeness

of the Artist on its current concert tour and to prevent others from exploiting that value without

permission. Massachusetts Gen. Laws ch. 214, §3A subsumes the common law notion of a right

of publicity, and safeguards Plaintiff's right to commercially exploit the name and likeness of the

{B0432166; 2}

Artist.  Bi-Rite Enterprises, Inc., v. Bruce Miner Co., 757 F.2d 440, 444 (1st Cir. 1985);

Tropeano v. Atlantic Monthly Co., 379 Mass. 745, 400 N.E.2d 847 (1980);  Haelen Labs., Inc. v.

Topps Chewing Gum, Inc., 202 F.2d 866, 868 (2d Cir. 1953); Zacchini v. Scripps-Howard

Broadcasting Co., 433 U.S. 562, 575-76 (1977); see generally Winnger, Right of Identity, Right

of Publicity and Protection for a Trademark's Persona., 71 Trademark Rptr. 193 (1981).

    "The right of publicity protects the commercial value of a person's identity."

Restatement (3d) of Unfair Competition § 46(d) (1995).  In Massachusetts, the interest protected

by Mass. Gen. Laws ch. 214, §3A is "the interest in not having the commercial value of one's

name, portrait or picture appropriated to the benefit of another."  Tropeano 379 Mass. at 749, 400

N.E.2d at 850.  This interest is also protected by statute in New York by New York Civil Rights

Law §§ 50-51, which contains language nearly identical to Mass. Gen. Laws ch. 214, §3A and

may assist the Court in its interpretation of the right of publicity.  Judge Henry Werker of the

Southern District of New York described the following three part test for a right of publicity

claim:

> An individual claiming a violation of his right to publicity must
> show: (1) that his name or likeness has publicity value; (2) that he
> himself has "exploited" his name or likeness by acting "in such a
> way as to evidence his . . . own recognition of the extrinsic
> commercial value of his . . . name or likeness, and manifested that
> recognition in some overt manner;" and (3) that defendant has
> appropriated this right of publicity, without consent, for advertising
> purposes or for the purposes of trade.

Lerman v. Chuckleberry Publishing Inc., 521 F. Supp. 228, 232 (S.D.N.Y. 1981), rev'd on other

grounds, sub. nom. Lerman v. Flynt Distrib. Co., 745 F.2d 123 (2d Cir. 1984) (quoting Hicks v.

Casablanca Records, 464 F. Supp. 426, 429-30 (S.D.N.Y. 1978)).  This right of publicity has

been recognized by virtually every court -- and every state -- where the question has arisen.  See

Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978), modified on other grounds, 652

{B0432166; 2}

F.2d 278 (2d Cir. 1981); Memphis Development Foundation v. Factors Etc., Inc., 616 F.2d 956 (6th Cir. 1980).

Plaintiff has satisfied the traditional three-part test. The recordings and personal appearances of the Artist enjoy the highest commercial success and popularity. Moreover, the Artist and Plaintiff have embarked on a controlled program of merchandising. The injunctive relief sought by Plaintiff is against the unauthorized appropriation of these rights and the unauthorized application of the Artist name and likeness to novelty merchandise.

**C.    Defendants are Engaging in Unfair Competition**

The common law prohibits unfair competition. See International News Service v. Associated Press, 248 U.S. 215 (1918) ("a party cannot reap where it has not sown"). Unfair competition is demonstrated where a defendant, without permission, uses the names or likenesses owned or licensed to a plaintiff. See Boston Professional Hockey Ass'n v. Dallas Cap and Emblem Mfg., 510 F.2d 1004, 1010 (5th Cir. 1974) (use of another's name or trademark is unfair competition). Therefore, common law unfair competition is manifest in the instant case.

**II.**

**PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER, AN ORDER OF SEIZURE, AND A PRELIMINARY INJUNCTION**

This action is aimed at bootleggers -- groups of individuals who manufacture counterfeit merchandise and sell it throughout the Artist's tour. The only available remedy which can protect Plaintiff and the Artist is injunctive relief, including an order of seizure.

**A.    A Temporary Restraining Order is Appropriate**

Under Fed. R. Civ. P. 65, a TRO may be granted if there is a likelihood of success on the merits and irreparable injury has been shown; a TRO may be granted ex parte with sufficient

{B0432166; 2}

reason. As explained above in Part I, Plaintiff has shown a likelihood of success on the merits.

Defendants have violated Plaintiff's federal trademark rights and have also violated

Massachusetts' privacy and unfair competition law. Further, as explained in the declarations of

Nick Jones and Barry I. Slotnick, Plaintiff has established that consumers are likely to be

confused by the bootleg merchandise and by defendants' use of Plaintiff's mark. Such confusion

injures Plaintiff's goodwill because purchasers are likely to attribute the poor quality of the

bootleg merchandise to Plaintiff. Additionally, sales of bootleg merchandise have a substantial

adverse effect on Plaintiff's existing and projected interstate business. Plaintiff would not be

adequately compensated by money damages, and only injunctive relief will provide an adequate

remedy. Plaintiff has, therefore, satisfied the requirements for injunctive relief.

## B.    An Order of Seizure is Appropriate

In addition to the injunctive relief sought, it is necessary to seize all the subject goods

manufactured, sold and/or distributed for sale by defendants in order to render complete relief

herein, prevent irreparable injury flowing to Plaintiff as a result of defendants' course of conduct

in counterfeiting these items, and prevent these items from being destroyed or transferred to

parties outside this litigation.

The courts have repeatedly issued temporary restraining orders and orders of seizure, in

advance of concerts, to stop the sale of bootleg merchandise. See, e.g., Exhibits A through F to

the Slotnick Declaration and the cases listed in Appendices A and B to this Memorandum.[1] This

procedure is specifically authorized by statute. Section 44 of the Lanham Act (15 U.S.C. § 1116)

---

[1] A minority of courts have been reluctant to grant nationwide ex parte injunctions and seizure orders against John Doe bootleggers. See Plant v. Various John Does, 19 F. Supp. 2d 1316 (S.D. Fla. 1998); Brockum Co. v. Various John Does, 685 F. Supp. 476 (E.D. Pa. 1988); Brockum Int'l, Inc. v. Various John Does, 551 F. Supp. 1054 (E.D. Wis. 1982); Rock Tours, Ltd. v. Various John Does, 507 F. Supp. 63 (N.D. Ala. 1981); and Billy Joel v. Various John Does, 499 F. Supp. 791 (E.D. Wis. 1980).

{B0432166; 2}

specifically provides for injunctions "upon such terms as the court may deem reasonable" to prevent the infringement of registered trademarks and violations of section 43(a). 15 U.S.C. § 1116(a). See also 15 U.S.C. § 1118 (a court has the authority to order delivery, seizure and destruction of merchandise which violates registered trademark or section 43(a) of the Lanham Act); 15 U.S.C. § 1126 (remedies for violation of registered trademarks also available for acts of unfair competition).

In virtually all of the cases cited herein where a wholly ex parte restraining order was awarded in the context of John Doe lawsuits, the courts have granted the ancillary remedy of seizure. In Moon Records v. Various John Does, 217 U.S.P.Q. (BNA) 46, 47-48 (N.D. Ill. 1981), the court recognized that immediate and irreparable injury would ensue before defendants could be given notice and an opportunity to be heard and, therefore, authorized the United States Marshal "to seize and impound any and all infringing merchandise . . . in vicinity of the International Amphitheater, Chicago, Illinois . . . ."

Moreover, under the traditional standard of Rule 65 of the Federal Rules of Civil Procedure, seizure orders should be granted. As described above, Plaintiff has demonstrated a strong likelihood of success on the merits. Moreover, in case of trademark infringement and unfair competition such as this, the fact that there is a likelihood of confusion constitutes irreparable injury as a matter of law sufficient to satisfy the requirements of Rule 65(b)(1). Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 14 (1st Cir. 1986) (acknowledging and agreeing with the "considerable authority for the view that the irreparable injury requirement is satisfied once it is shown that the defendant is wrongfully trading on the plaintiff's reputation"); I.P. Lund Trading ApS v. Kohler Co., 11 F. Supp.2d 112, 117 (D. Mass.), aff'd, 163 F.3d 27 (1st Cir. 1998); In re Vuitton et Fils S.A., 606 F.2d 1, 4-5 (2d

{B0432166; 2}

Cir. 1979).  Absent injunctive relief, in advance of the bootleg sales, the bootleg sales will occur

and the defendants will disappear, making it impossible to remedy this ongoing violation of

Plaintiff's rights.[2]

In Vuitton, the Second Circuit acknowledged that complete injunctive relief must be

accorded to parties who face the anomaly whereby the products subject to the injunction may be

transferred or destroyed prior to the enforcement of the injunction by a court of competent

jurisdiction.  The declarations submitted in support of Plaintiff's applications demonstrate that

granting of the temporary restraining order and order of seizure is not only appropriate, but in

fact imperative in order for Plaintiff to obtain any real remedy.  While notice has traditionally

been considered a part of procedural due process, the Supreme Court has recognized that "there

may be cases in which a creditor could make a showing of immediate danger that a debtor will

destroy or conceal disputed goods."  Fuentes v. Shevin, 407 U.S. 67, 93 (1972).

C.    **A Temporary Restraining Order and Order of Seizure, Without Notice, Are Available To Enjoin Activities of Persons Whose Identities Are Unknown and Where There is a Significant Risk of Destruction of Property**

The circumstances demonstrate that Plaintiff is entitled to an order of seizure without

notice to defendants.  Federal courts have repeatedly approved this ex parte procedure in cases,

such as the present one, where there is a significant risk that the defendant will hide or destroy

the bootleg merchandise if given notice of the impending seizure.  See, e.g., Vuitton v. White,

945 F.2d 569, 575-76 (3d Cir. 1991); Century Home Entm't, Inc., 859 F. Supp. 636, 638

(E.D.N.Y. 1994).  In fact, "the weight of authority around the country appears to favor the

---

[2] There is no harm to the defendants from the issuance of the injunction - the proposed order only authorizes the seizure of merchandise that violates the trademark laws.

{B0432166; 2}

granting of ex parte seizure orders in trademark counterfeiting cases." <u>McCarthy on Trademarks</u> <u>and Unfair Competition</u>, 4th Ed., J. Thomas McCarthy, § 30:34.

If defendants receive notice before any seizure of the bootleg merchandise is attempted, there is a significant possibility that they will simply remove their merchandise to a secure location and wait until the next concert, saddling Plaintiff with yet more needless expense and requiring constant investigative efforts. Thus, the requested <u>ex parte</u> seizure order is warranted here.

Plaintiff also seeks to move <u>ex parte</u> because it is attempting to stop the bootleg activities of defendants whose identities are presently unknown. Indeed, the identities of the individual bootleggers will not be known until they are stopped and the goods seized, and even then the bootleggers often refuse to give their real identities.

Rule 65 of the Federal Rules of Civil Procedure authorizes this Court to grant a temporary restraining order coupled with an order of seizure against the unidentified defendants. Subsequently, after the defendants are served and their infringing goods seized, the defendants will be identified to the court by proof of service (assuming they provide their true identities). The Court will then have grounds to preliminarily enjoin the defendants, and those acting in concert with defendants, for the remainder of the Artist's tour. Federal courts throughout the country have enjoined John Doe bootleggers in this fashion. See Exhibits A through F to the Slotnick Declaration and the cases listed in Appendices A and B to this Memorandum.

In each of these cases, the action was commenced against John and Jane Doe defendants and a temporary restraining order and seizure order was issued. <u>See also</u> <u>Moon Records v.</u> <u>Various John Does</u>, 217 U.S.P.Q. (BNA) 46, 47 (N.D. Ill. 1981):

{B0432166; 2}

The problem regarding identity of defendants will be met by
requiring copies of the complaint and this restraining order to be
served on all persons from whom the infringing merchandise is
seized on February 26, 27, 28 and March 1, 1981. These persons
will be asked to reveal their names so that they can be added as
parties to the lawsuit and appear in court to contest the seizures at
the hearing on March 2, 1981. Moreover, [plaintiff] will be
required to post a bond to cover any additional damages that may
be incurred.

The temporary restraining order and order of seizure must not only issue against John and

Jane Does, but must be issued without notice. As a practical matter, it is impossible to give

notice to defendants whose identity is not yet known. Moreover, the Lanham Act specifically

contemplates that a temporary restraining and seizure order against infringing merchandise may

be had on <u>ex parte</u> application. 15 U.S.C. § 1116(d) authorizes an ex parte restraining order

where, in addition to the traditional requirements for injunctive relief: (1) an order other than an

<u>ex parte</u> seizure order is not adequate; (2) the applicant has not publicized the requested seizure;

and (3) the person against whom seizure would be ordered would destroy or otherwise make

inaccessible to the court the infringing materials. 15 U.S.C. § 1116(d)(4)(B).

Moreover, Rule 65(b) of the Federal Rules of Civil Procedure also permits the Court to

grant the requested relief. As the court stated in <u>In re Vuitton et Fils, S.A.</u>, 606 F.2d l, 4-5 (2d

Cir. 1979):

Assuming that all of the other requirements of Rule 65 are met, the
Rule by its very terms allows for the issuance of an ex parte
temporary restraining order when (1) the failure to issue it would
result in "immediate and irreparable injury, loss or damage" and
(2) the applicant sufficiently demonstrates the reason that notice
"should not be required." In a <u>trademark infringement case such as
this, a substantial likelihood of confusion constitutes, in and to
itself, irreparable injury sufficient to satisfy the requirements of
Rule 65(b)(1)</u> . . . Here, we believe that such a likelihood of
product confusion exists. The allegedly counterfeit Vuitton
merchandise is virtually identical to the genuine items. Indeed the
very purpose of the individuals marketing the cheaper items is to

- 13 -

confuse the buying public into believing that it is buying the true
article.

While the defendants in the Vuitton cases could be identified, the bootleggers here are as
yet unidentified. Here, the only effective remedy is an ex parte TRO and seizure order. Unless
an injunction issues without notice, no injunction is possible: the identities of the defendants will
not be determined until the goods are seized. Moreover, even if notice was given, the defendants
would simply move their operations to avoid the injunction and the jurisdiction of this Court.

**D.     Plaintiff is Entitled To A Nationwide Preliminary Injunction**

The illegal acts to be enjoined here are a concerted action of many individuals acting
together. As demonstrated in the accompanying declarations, the defendants in this action are
manufacturing and distributing their infringing goods at various locations on the concert tour.
Identical bootleg T-shirts and other merchandise have been found at several locations at previous
concerts, indicating that the infringers go from one concert to another to sell their merchandise.

Clearly, a nationwide preliminary injunction against defendants and those acting in
concert with them is appropriate and required if Plaintiff is to realize meaningful relief from
defendants' repeated and migratory infringing activity.

Once the defendants have been served in this district, the Court acquires personal
jurisdiction over them. Fed. R. Civ. P. 4; see also, 15 U.S.C. § 1116 (Lanham Act injunction
may be served against parties against whom the injunction is granted anywhere in the United
States). At the hearing on the preliminary injunction, this Court should enjoin all of defendants'
activities during the entire nationwide tour. Absent such a nationwide injunction, complete relief
here would be impossible to achieve. Plaintiff would have to seek separate temporary restraining
orders at every location on the tour. As a practical matter, such a series of lawsuits is impossible

- 14 -

and cost-prohibitive, and would in any event result in a terrible waste of the resources of both the parties and of the federal courts.

Each time there is a seizure pursuant to the preliminary injunction the requirement of notice to the person against whom the relief operates will be satisfied. Once the preliminary injunction is issued it will be served on anyone selling bootleg merchandise at concerts on the tour. The bootleggers, therefore, will have notice of the injunction at the concert and when their goods are seized.[3] Clearly, a nationwide preliminary injunction against defendants and those acting in concert with them is appropriate and required if Plaintiff is to realize meaningful relief from defendants' bootlegging activity.

The multi-district territorial scope of the requested preliminary injunction is fully within the Court's authority. See Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., 747 F.2d 844, 850 (3d Cir. 1984) (affirming nationwide District Court order enjoining activities that violated Section 43(a) of the Lanham Act). Professors Wright and Miller have stated that "there is no doubt that if the court has personal jurisdiction over the parties, it has the power to order each of them to act in any fashion or in any place. . ." 11A Wright & Miller, Federal Practice and Procedure, Civil 2d, § 2945 at 97. The same holds true for non-parties who act in concert with the parties. The many cases listed in Appendices A and B to this Memorandum, and annexed to the Slotnick Declaration, attest that injunctions of this scope have been granted in Federal District Courts throughout the United States, including in this District.

---

[3] To the extent that it is difficult or impractical for any of the bootleggers whose goods are seized to come to this District to contest the applicability of the injunction, Plaintiff has no objection to that challenge being heard in a local federal court. Plaintiff will waive any objections to the location of any action contesting the applicability of the preliminary injunction to a particular bootlegger.

- 15 -

It is well settled that an injunction issued by a federal district court having in personam jurisdiction operates continuously and perpetually upon parties to the action throughout the United States. Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 451 (1932); Kesler v. Eldred, 206 U.S. 285, 288 (1907); Rubber Tire Wheel Co. v. GoodYear Tire & Rubber Co., 232 U.S. 413, 417 (1914). In Leman, the Supreme Court considered a contempt proceeding against a party to a permanent injunction granted in the District of Massachusetts. The Court held that a party to the injunction "could not escape the decree by removing from, or staying without, the District of Massachusetts .... Disobedience [of the injunction] constituted contempt of the court which rendered the decree, and was nonetheless contempt because the act was committed outside the district, as the contempt lay in the fact, not in the place, of the disobedience to the requirement." Leman, 284 U.S. at 451-52.

Thus, the Court recognized in Leman the necessity of dispensing with the requirement that a court maintain physical control over a party to bind that party to a federal district court's injunction. The Court labeled the federal district court's extraterritorial injunctive binding power "one of the decencies of civilization that no one would dispute." Leman, 284 U.S. at 454. The Court added:

> The decree . . . bound the respondent personally. It was a decree
> which operated continuously and perpetually upon the respondent
> in relation to the prohibited conduct. The decree was binding upon
> the respondent, not simply within the District of Massachusetts,
> but throughout the United States.

Id. at 451. See also Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., 747 F.2d 844, 850 (3d Cir. 1984) (affirmance of a District Court order enjoining activities that violated Section 43(a) of Lanham Act would have nationwide effect, while affirmance only under the state claim would prevent defendant's activity only as it relates to the state.)

- 16 -

The circuit courts have diligently enforced the extraterritorial power of the federal district courts. The Seventh Circuit has relied on <u>Leman</u>, noting that "[t]raditional injunctions are not registrable under [28 U.S.C.] § 1963 . . . because that would be pointless:  they act in personam nationwide." <u>Pacific Reinsurance Management Corp.</u>, 929 F.2d 1215, 1218 (7th Cir. 1991).  In <u>Stiller v. Hardman</u>, 324 F.2d 626 (2d Cir. 1963), the Second Circuit held that an Ohio district court could enforce and punish a violation of an injunction that it issued though the actual violation took place in New York.  The <u>Stiller</u> court arrived at this holding by looking to the binding authority of Supreme Court decisions which the Second Circuit interpreted as holding that the "mandate of an injunction issued by a federal district court runs throughout the United States. . . .  Violation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred." <u>Id</u>. at 628.

The district courts have also enforced their extraterritorial injunctive power.  In <u>Fleming v. Gray Manufacturing Co.</u>, 352 F. Supp. 724, 726 (D. Conn. 1973), the United States District Court for the District of Connecticut used its powers in equity to protect the plaintiffs from the defendant's disposal of assets not yet attached and located in New York.  The <u>Fleming</u> court held that once it had personal jurisdiction over a party, it could order the party to do or refrain from doing certain acts in other states.  <u>See</u> Harvey Shae Yatta, <u>National, Multi-District Preliminary Tour Injunctions: Why the Hesitation?</u> 40 IDEA: J. L. & Tech. 195 (2000) (such national injunctions "are essential to the protection" of trademarks and the courts should acknowledge that "without national, multi-district preliminary injunctions, bootleggers will remain a dominant force").

The long history and robust extraterritorial enforcement of district courts' injunctive powers support Plaintiff's assertion that this Court may enforce an injunction it issues throughout the United States regardless of where a violation of the injunction may occur.

## III.

### THIS COURT'S POWERS TO ENFORCE ITS INJUNCTIONS THROUGHOUT THE UNITED STATES IS BINDING ON THOSE PARTIES IN ACTIVE CONCERT OR PARTICIPATION WITH THE ENJOINED PARTIES

The bootlegging operation to be enjoined here is a concerted action of many individuals acting together with the defendants to be named in the preliminary injunction. As demonstrated in the accompanying declarations, the nature and quality of the merchandise indicates a concerted operation. The quality of the merchandise indicates a large manufacturing operation that is distributing its goods at various locations on the tour. Identical shirts have been found at several locations on previous tours, indicating that the bootleggers go from one location on the tour to another to sell their merchandise.

Pursuant to Federal Rule of Civil Procedure 65(d), the persons bound by injunctive or restraining orders include the parties to the action and their (1) officers and employees; (2) agents; (3) attorneys; and (4) those persons in active concert or participation with the parties to the action who receive actual notice of the order by personal service or otherwise. The scope of the necessary legal relationship, for purposes of Rule 65(d), is not to be narrowly restricted. In Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945), the Supreme Court held that Rule 65(d) was intended to embody "the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." See also Rockwell Graphics Systems, Inc. v. DEV Industries, Inc., 91 F.3d 914, 919 (7th Cir. 1996); Day Companies, Inc. v. Patat, 440 F.2d

{B0432166; 2}

1343 (5th Cir. 1971) (injunction covers non-parties who "have knowingly been in complicity" with parties). <u>See</u>, <u>generally</u>, 11A Wright & Miller, <u>Federal Practice and Procedure, Civil 2d</u> § 2956. Thus, the court may enjoin all participants of the bootlegging operation of which any defendants actually served are members. Moreover, the Lanham Act specifically authorizes that an injunction granted under Section 43(a) may be served against parties wherever they are found in the United States. <u>See</u> 15 U.S.C. § 1116.

The circuit courts and district courts have liberally applied FRCP 65(d) to find various persons, not parties to an action in which an injunction was issued, bound by the terms of the injunction. In <u>Reich v. United States</u>, 239 F.2d 134 (1st Cir. 1956), a physician not a party to an original injunction prohibiting the use of an "orgone energy accumulators," was found in contempt of an injunction for acting in concert with an enjoined party. The physician had been put on notice by mail of the injunction. The First Circuit noted that even if a person is not served with a copy of the injunction he is still bound by its terms provided he has actual knowledge of the injunction. Likewise, in <u>Doyne v. Saettele</u>, 112 F.2d 155 (8th Cir. 1940), the court held that proper service of process was not required to bind a non-party to an injunction provided the non-party had actual knowledge of the injunction.

In the instant case, those acting in concert or participation with the defendants served in this district <u>will</u> be personally served with the TRO/preliminary injunction at the concerts around the country. In this way, they will receive actual notice of the injunction as required by Fed. R. Civ. P. 65(d). These additional parties will be fully identifiable by virtue of the wares they sell. It is counsel's experience, and the experience of Plaintiff's security personnel, that merchandise having the same make and design finds its way to concert venues throughout the country; the bootlegger who hawks homemade wares at a single venue is the exception. Plaintiff has trained

{B0432166; 2}

security personnel working on its behalf to identify the major bootleggers. Often, the

bootleggers and security are mutually identifiable from working past tours. Testimony has been

offered from Plaintiff's security consultant, who is responsible for monitoring illegal bootleg

sales during the Tour, that the same bootleggers show up concert after concert and year after

year, and that the same make of unauthorized merchandise appears at venue after venue. There

is no doubt that the same scenario will be presented during the Artist's current tour; Plaintiff

needs the relief requested herein to gain a foothold against this tide of illegal activity.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant

Plaintiff's application for a temporary restraining order, order of seizure, and preliminary

injunction.

                                    Respectfully submitted

                                    RST (2005), INC.


                                    By its attorneys,

Dated:  August 15, 2005             /s/ William T. Matlack_____
                                    John J. Rosenberg (BBO No. 428340)
                                        jrosenberg@sandw.com
                                    William T. Matlack (BBO No. 552109)
                                        wmatlack@sandw.com
                                    SULLIVAN & WORCESTER LLP
                                    One Post Office Square
                                    Boston, Massachusetts  02109
                                    (617) 338-2800
                                    Fax:  (617) 338-2880

                                    and

                                    Barry I. Slotnick
                                    LOEB & LOEB LLP
                                    345 Park Avenue
                                    New York, New York 10154-0037
                                    212-407-4000

{B0432166; 2}

**APPENDIX A**

APPENDIX "A"

UNITED STATES DISTRICT COURT - EX PARTE SEIZURE ORDERS

MULTI-DISTRICT INJUNCTIONS

<u>Brockum Company, Svengali Merchandising, Inc., et al. v. Christopher Clayton, et al.</u>, Case No. C 88-3519 (NHP) (D.N.J. 1988), before Hon. Nicholas Politan, involving tour of "Aerosmith."

<u>Brockum Company and Third Stage Tours, Inc. v. Glen Scott, et al.</u>, Case No. 87-2597 (D.N.J. 1987), before Hon. John W. Bissell, involving tour of "Boston."

<u>Brockum Company v. Eddie Brandt, et al.</u>, Case No. 89 CIV 579 (N.D.N.Y. 1989), before Hon. Thomas J. McAvoy, involving tour of "Cinderella."

<u>Brockum Company, Don Dokken, et al. v. Tom Jackson, et al.</u>, Case No. CV 87-3767 (E.D.N.Y. 1987), before Hon. Reena Raggi, involving tour of "Dokken."

<u>Brockum Company and D.D. Productions, Ltd. v. John Does, et al.</u>, Case No. 87 Civ. 4635 (PKL) (S.D.N.Y. 1987), before Hon. Peter K. Leisure, involving tour of "Duran Duran."

<u>Brockum Company, Bludgeon Riffola, Ltd., et al. v. John H. Lawson, et al.</u>, Case No. 87 CV 1312 (N.D.N.Y. 1987), before Hon. Howard G. Munson, involving tour of "Def Leppard."

<u>Brockum Company, Boneglide Pty. Ltd., et al. v. Keith Bussy, et al.</u>, Case No. C 88-1476 (D.N.J. 1988), before Hon. Nicholas Politan, involving tour of "INXS."

<u>Brockum Company and TTC Touring Corp. v. Ronald Burke, et al.</u>, Case No. 88 CIV 1440 (S.D.N.Y. 1988), before Hon. Richard J. Daronco, involving tour of Michael Jackson.

<u>Brockum Company, Judas Priest, a joint venture, et al. v. Albert Banks, et al.</u>, Case No. 88-3301 (HLS) (D.N.J. 1988), before Hon. H. Lee Sarokin, involving tour of "Judas Priest."

<u>Brockum Company v. Sean Joseph Campbell, et al.</u>, Case No. SA-89-CA-0172 (W.D. Tex. 1989), before Hon. H.F. Garcia, involving tour of "Metallica."

<u>Brockum Company and Monsters of Rock Company v. Phillip Beaudet, et al.</u>, Case No. 88-0982 (S.D. Fla. 1988), before Hon. William M. Hoeveler, involving "Monsters of Rock" tour.

<u>Brockum Company and Promoproductions, Inc. v. John Does, et al.</u>, Case No. 88 02000 FFF (C.D. Ca. 1988), before Hon. Ferdinand F. Fernandez, involving tour of "Pink Floyd."

<u>Brockum Company and Touring By Moonlight, Ltd. v. Bridgette Halson, et al.</u>, Case No. 88-2039 (DRD) (D.N.J. 1988), before Hon. Dickinson R. Debevoise, involving tour of Robert Plant.

<u>Brockum Company v. Michael Adams, et al.</u>, Case No. 88 CIV 7148 (CSH) (S.D.N.Y. 1988), before Hon. Charles S. Haight, involving tour of "Van Halen."

Brockum Company, Whitesnake Productions Overseas, Limited, et al. v. Robert Blake, et al., Case No. 88-0524 (JWB) (D.N.J. 1988) before Hon. John W. Bissell, involving tour of "Whitesnake."

Brockum Company v. John Does, et al., Case No. 90-2144 (NHP) (D. N.J. 1990), before Hon. Nicholas Politan, involving tour of Phil Collins.

Brockum Company v. John Does, et al., Case No. 90-3634 (NHP) (D. N.J.) 1990), before Hon. Nicholas Politan, involving tour of Billy Idol/Faith No More.

Brockum Company v. John Does, et al., Case No. 90-4423 (NHP) (D. N.J. 1990), before Hon. Nicholas Politan, involving tour of "AC/DC."

Brockum Company v. John Does, et al., Case No. 90-44b72 (NHP) (D. N.J. 1990), before Hon. Nicholas Politan, involving tour of "Poison/Warrant."

Brockum Company v. John Does, et al., Case No. 91-2742 (JFK) (S.D.N.Y. 1991), before Hon. John F. Keenan, involving tour of "Jane's Addiction."

Brockum Company v. John Does, et al., Case No. 91-524 (JPS) (E.D. Wis. 1991), before Hon. J.P. Stadtmueller, involving tour of "Guns N'Roses."

Giant Merchandising, Inc. v. John Does 1-100, et al., Case No. 92-2315 (NHP) (D.N.J. 1992), before Hon. Nicholas Politan, involving tour of "Genesis."

BCL Finance (Ireland) Limited v. Kevin King, et al., Case No. 92-2844 (NHP) (D.N.J. 1992), before Hon. Nicholas Politan, involving tour of "Guns N' Roses."

Giant Merchandising, Inc. v. John Does 1-100, et al., Case No. C-1-92-456 (S.D. Oh. 1992), before Hon. Carl B. Rubin, involving tour of Jimmy Buffett.

{B0432166; 2}

**APPENDIX B**

APPENDIX "B"

UNITED STATES DISTRICT COURT - EX PARTE SEIZURE ORDERS

TRADEMARK CASES - Musical Group or Performer Names,

Concert Vicinity - National Multi-District Seizure

Orders

1. Halford, et al. v. Various John Does, et al., Case No. 80-3802 (S.D.N.Y. 1980).

2. Billy Joel, et al. v. Various John Does, et, al., Case No. 80-3411 (S.D.N.Y. 1980).

3. Alex Van Halen, et al. v. Various John Does, et al., Case No. 80-1341 (W.D. La. 1980).

4. Frank Zappa, et al. v. Various John Does, et al., Case No. 80-2938 (E.D.N.Y. 1980).

5. Rikie Lynn Metlock, et al. v. Various John Does, et al., Case No. 81-6231 (S.D.N.Y. 1981).

6. Dave Hlubeck, et al. v. Various John Does, et al., Case No. 80-6083 (S.D.N.Y. 1980).

7. Patrick Henry Travers, et al. v. Various John Does, et al., Case No. 81-274 (D. Ariz. 1981).

8. Rock Tours, Ltd. v. Gary Roach, et al., Case No. 81-0838 (C.D. Cal. 1981).

9. Roadrunner Productions, Ltd., et al. v. Various John Does, et al., Case No. 81-3208 (S.D.N.Y. 1981).

10. Showtime Marketing, Inc. v. Various John Does, et al., Case No. 81-C-1830C (N.D. Okla. 1981).

11. BCLF International v. Various John Does, et al., Case No. 81-957 (N.D.N.Y. 1981).

12. Triumph, et al. v. Various John Does, et al., Case No. 814147 (N.D. Cal. 1981).

13. Ron Boutwell Enterprises v. Various John Does, et al., Case No. 81-34 (S.D.N.Y. 1981).

14. BCLF International v. Various John Does, et al., Case No. 80-1569 (W.D. La. 1980).

15. Richie Blackmore, et al. v. Various John Does, et al., Case No. 811-275-PEX-WEC (D. Ariz. 1981).

16. Alex Van Halen, et al. v. Various John Does, et al., Case No. 80-905 Civ. (M.D. Fla. 1980).

17.   Visual Artists and Galleries Association, Inc., et al., v. Various John Does, et al., Case No. 80-Civ. 4487 (S.D.N.Y. 1980).

18.   George Alper, et al. v. Various John Does, et al., Case No. Civ 80-2938 (E.D.N.Y. 1980).

19.   Tommy Shaw, et al. v. Various John Does, et al., Case No. 80 Civ 722 (S.D.N.Y. 1980).

20.   Roadrunner Productions, Ltd., et al. v. Various John Does, et al., Case No. 1-2439 (E.D. Pa. 1981).

21.   Hastings, Clayton, Tucker & Craiq, et al. v. Various John Does, et al., Case No. 81 Civ 7308 (S.D.N.Y. 1981).

22.   Entertainers Merchandise Management Corp. v. Various John Does, et al., Case No. 82-1113A (N.D. Ga. 1982).

23.   Entertainers Merchandise Management Corp. v. Various John Does, et al., Case No. 83-3416 (E.D. Pa. 1983).

24.   Rock Merchandise, Inc. v. Various John Does, et al., Case No. 84 C10838 (N.D. Ill. 1984).

25.   Rock Merchandise, Inc. v. Hensley, Case No. 82-561-C (W.D.N.Y. 1982).

26.   Winterland Concessions Company, d/b/a Winterland Productions and Rod Stewart v. Thomas Gibson, et al., Case No. 93-1496 (W.D. Pa. 1993).

{B0432166; 2}