John J. Rosenberg
William T. Matlack
SULLIVAN & WORCESTER
One Post Office Square
Boston, Massachusetts 02109
617-338-2800

and

Barry I. Slotnick
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-0037
212-407-4000

*Attorneys for Plaintiff RST (2005), Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
-----------------------------------------------------------X

RST (2005), INC.,

           Plaintiff,

        -against-

JOHN DOES 1-100, JANE DOES 1-100,
AND XYZ COMPANIES 1-100,

           Defendants.
-----------------------------------------------------------X

Case No. 05-11680 WGY

**DECLARATION OF NICK JONES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND ORDER OF SEIZURE, WITH TEMPORARY RESTRAINING ORDER**

I, NICK JONES, hereby declare as follows:

1. I am responsible for merchandising and security with respect to the current North American concert tour (the "Tour") of the musical performing artists known as THE ROLLING STONES (the "Artist"). I am authorized by plaintiff to make this declaration in support of plaintiff's application for a temporary restraining order, order of seizure, and preliminary injunction, enjoining the sale of, and permitting the seizure of, unauthorized

"bootleg" merchandise (the "Bootleg Merchandise") bearing the Artist's name, image, logo, or trademark (collectively, the "Trademarks").

2. Plaintiff possesses the exclusive rights to distribute tour merchandise bearing the Trademarks at all concerts on the Artist's Tour. During these concerts, the Artist will be appearing as the featured musical performer.

3. The Tour will commence on August 21, 2005 at Fenway Park in Boston, Massachusetts, and the Artist will have a second performance at Fenway Park on August 23, 2005. The Tour will then travel throughout the country, continuing through the end of January 2006. As part of the Tour, the Artist will appear in concerts at major venues throughout the United States, including Hartford, Detroit, Chicago, New York, Columbus, Washington, Philadelphia, Atlanta, Los Angeles, San Francisco and Dallas. The Artist, long recognized as the world's greatest rock and roll band, has performed in concerts for over five decades. During the last 25 years their performances have attracted sell out crowds in the millions. They have also attracted scores of bootleggers who have sold, and offered for sale, unauthorized Bootleg Merchandise, in violation of plaintiff's rights and property interests. On the basis of the following, the plaintiff seeks a preliminary injunction, with temporary restraining order and order of seizure.

4. I have extensive experience with the sale of merchandise on concert tours and the problem of bootlegging. I have been working in the tour merchandising and security industry for 18 years and for the past 8 years I have been a Tour Merchandising Manager for Anthill Trading, Inc., the exclusive merchandising licensee for the current tour. I have personally supervised 4 previous Rolling Stones tours, as well as tours by other popular rock bands such as: Pink Floyd, AC/DC, Guns and Roses, Metallica, Prince and Neil Young, to name a few.

5. The relief provided by the Court in 1997, 1999 and 2002 proved invaluable to the preservation of Plaintiff's property rights during the Artist's past tours.

6. The Artist is a prominent and successful musical performing group. Its audience spans a large portion of the total concert-going public. The Artist's career is firmly established and it enjoys a large following by its audience. Typically, the Artist's concert venues are "sold out" several weeks before the Artist's scheduled performances. Because of the Artist's status among popular music enthusiasts, the Tour is expected to be a very successful live performance tour.

7. RST (2005), Inc. is engaged in the business of manufacturing, distributing, and selling authorized T-shirts, jerseys, sweatshirts, posters and the like (collectively, "Tour Merchandise") bearing the names, logos, likenesses, and trademarks of the Artist.

8. Given the Artist's popularity and its status among popular music enthusiasts, I have no doubt that bootlegging will occur on the Tour, including the Artist's concerts at Fenway Park (the "Boston Shows"). Based upon my experience, I further believe that the same bootleggers who appear at the Boston Shows will continue to "work" the Tour, i.e., follow the Artist from city to city selling their bootleg goods.

9. In my experience the problem of bootlegging has grown with the popularity of rock and roll concert tours. On previous tours, I have recognized individual bootleggers from venue to venue as they follow the artist or group. In many instances, the bootleggers sell identical shirts, which indicates that they are supplied from a common source. Organized bootleggers generally "work the route" themselves or arrange to have local individuals sell the infringing merchandise for them. Bootleggers follow a tour from concert to concert to maximize

3

their illegal profits, since bootlegging at only one or a small number of concerts generally is not financially worthwhile.

10. In the circumstances, it is not difficult to understand the bootleggers' motives. I anticipate that all future concerts on the Tour will be sold out. By the end of the Tour, the Artist will have performed before hundreds of thousands of fans. Typically, these fans seek to purchase souvenirs at the concerts, including T-shirts, sweatshirts, baseball caps, and posters. Without protection from the courts, the bootleggers, located outside the concert venues, have the first and last opportunity to make these sales.

11. Bootlegging and counterfeiting greatly injure musical performing groups and entertainers, including plaintiff and its licensees, in two ways. First, the bootleggers are not bound by contract to provide first-quality apparel and graphic designs, as is required of the licensed merchandiser.

12. Second, with no obligation to pay royalties to the artist, and because they do not pay any part of their gross sales receipts to the concert venue, the bootleggers can drastically undersell the legitimate merchandiser. This ability to undersell the legitimate merchandiser is enhanced by the fact that bootleggers do not collect or pay sales or income taxes. In short, bootlegging results in severe economic harm to the Artist, the plaintiff, its licensees, and the public.

13. The fans also suffer because they are buying inferior imitations which rarely last very long. The fans are disappointed and, in their confusion as to the source of the merchandise, blame the artists and the licensed merchandisers. This adversely affects future legitimate sales and tends to create a negative feeling by the fans directed against the artist and merchandiser, which in turn results in decreased record sales and concert attendance.

14. Absent significant protection from the courts, the bootleggers have an insurmountable advantage over the artists and legitimate merchandisers. Left unprotected, merchandisers will be unable to offer performers appropriate sums for merchandising rights, which in turn limits the artists' ability to stage unique and exciting concerts for their fans. In some instances, the artist is prevented from touring altogether.

15. In conclusion, there is no question that bootleggers and counterfeiters, large and small, have targeted, and will continue to target, the Artist's Tour. There is also no question that these bootleggers and counterfeiters have no right to sell their Bootleg Merchandise. However, if they are not enjoined and their infringing merchandise not seized, plaintiff will continue to suffer severe economic harm, and will be irreparably harmed by the inferior product these bootleggers are disseminating.

16. For these reasons, I respectfully request that the Court grant Plaintiff's application.

17. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of August, 2005.

                                                               /s/ Nick Jones
                                                               NICK JONES